FILED
JUL 13 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

WILLIAM FUGATE,

Defendant.

1:21-CR-127 LJV (MJR)

REPORT, RECOMMENDATION
AND ORDER

---

This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 9)

## BACKGROUND

On August 5, 2021, a federal grand jury in the Western District of New York returned a two-count indictment against defendant William Fugate ("defendant" or "Fugate"), charging him with the following crimes: (1) possession with intent to distribute 50 grams or more of methamphetamine on or about May 6, 2021, in violation of Sections 841(a)(1) and 841(b)(1)(B) of Title 21 of the United States Code; and (2) using and maintaining a drug-involved premises, at 619 Northumberland Avenue, Buffalo, New York, on or about May 6, 2021, in violation of Section 856(a)(1) of Title 21 of the United States Code and Section 2 of Title 18 of the United States Code (the "Indictment"). (Dkt. No. 7) The Indictment also contains an allegation of prior conviction for serious violent felonies as well as a forfeiture allegation for the sum of $8,527 in United States currency seized by law enforcement officers on or about May 6, 2021 from 619 Northumberland Avenue, Buffalo, New York. (*Id.*)

On March 15, 2022, Fugate filed a motion to suppress evidence found pursuant to the execution of a search warrant at 619 Northumberland Avenue on May 6, 2021. (Dkt. No. 27) Defendant also made various omnibus discovery demands. (*Id.*) The Government filed a response and a request for reciprocal discovery on April 11, 2022. (Dkt. No. 31) Defendant was permitted to file a reply on or before May 16, 2022, but no reply has been filed. The Government submitted a copy of the search warrant application for *in camera* review by this Court. Upon review of the motion papers and the search warrant application, the Court deemed the matter submitted. (Dkt. Nos. 32, 33)

## DISCUSSION

The Court will first address Fugate's motion to suppress evidence before turning to his non-dispositive omnibus discovery demands and the Government's request for reciprocal discovery.

### *Motion to Suppress Evidence Recovered From 619 Northumberland Avenue*

On May 4, 2021, Lackawanna City Court Judge Kenneth Szyszkowski signed a warrant authorizing the search of a residence at 619 Northumberland Avenue, Buffalo, New York, as well as a black Cadillac sedan identified by registration number and defendant's person.[1] (Dkt. No 1; Dkt. No. 31, Exhs. 1, 2) The search warrant was

---

[1] The facts described herein are taken from the affidavit of FBI Special Agent Clint Winters filed in support of the criminal complaint dated May 7, 2021; the affidavit of Fugate submitted in support of his suppression motion; the search warrant and search warrant application for 619 Northumberland Avenue; and the parties' memorandums of law and accompanying exhibits filed with respect to the instant motions. Based upon these documents, exhibits, and filings, the Court finds that none of the material facts described herein are in dispute. Stated another way, defendant has not raised any factual dispute as to the circumstances of the search or the discovery of the evidence and contraband. "In order to warrant a suppression hearing, a defendant must demonstrate a specific factual dispute that can be resolved by a hearing." *United States v. Johnson*, 15-CR-98, 2017 U.S. LEXIS 195411 (W.D.N.Y. Nov. 3, 2017); *accord United States v. Mathurian*, 148 F.3d 68 (2d Cir. 1998). Thus, the Count finds no basis to hold an evidentiary hearing in order to make a recommendation on the legal arguments raised in defendant's suppression motion.

executed by members of the FBI Buffalo Safe Streets Task Force and the Lackawanna Police Department two days later, on May 6, 2021. (Dkt. No. 1, pg. 3: Dkt. Nos. 27, 31) Fugate was present at the residence when the search warrant was executed. (Dkt. No. 1, pg. 3; Dkt. No. 28) A Chevy Impala, registered to defendant, was parked in the driveway of 619 Northumberland Avenue at the time of the search. (Dkt. No. 1, pg. 3) During the search, officers found a locked safe in the closet of the master bedroom. (Dkt. No. 1, pg. 3; Dkt. Nos. 27, 28, 31) Officers also observed clothing and shoes belonging to Fugate in the same bedroom. (Dkt. No. 1, pg. 3; Dkt. No. 28) On a table in the residence, officers found a key ring containing a key to the Impala and a key to the safe. (Dkt. No. 1, pg. 3; Dkt. Nos. 27, 28, 31) Officers used the key to open the safe and discovered approximately 370 grams of methamphetamine inside, stored in individually wrapped plastic bags, as well as a spoon with white residue. (Dkt. No. 1, pg. 3; Dkt. Nos. 27, 31) Officers also recovered a digital scale with white residue from a dresser in the same master bedroom where the safe was found. (Dkt. No. 1, pg. 3; Dkt. No. 27) Fugate was arrested and a federal criminal complaint was filed the next day.[2] (Dkt. Nos. 1, 27)

Fugate contends that the evidence and contraband recovered from the search of 619 Northumberland Avenue must be suppressed because: (1) the warrant was not supported by probable cause; (2) the warrant lacked particularity; and (3) the officers were not permitted to open the safe. For the following reasons, the Court disagrees with defendant and concludes that the motion to suppress should be denied.

---

[2] The Government indicates that Fugate made a "post-arrest *Mirandized* statement" wherein he claimed responsibility for the drugs found during the search. (Dkt. No. 31, pgs. 2, 14-15) Defendant's motion papers also acknowledge that Fugate claimed responsibility for the drugs in a post-arrest statement. (Dkt. No. 27, pg. 4) Defendant has not moved to suppress any statements he made to law enforcement, either at the time of his arrest on May 6, 2021 or at any other time relevant to this case. (Dkt. No. 27)

*Fugate's Standing*

The Fourth Amendment protects people only where they have met a twofold requirement: "first that a person have exhibited an actual (subjective) expectation of privacy, and second, that the expectation be one that society is prepared to recognize as reasonable." *Katz v. United States*, 389 U.S. 347, 361 (1967). It is well-settled that an overnight guest has a legitimate expectation of privacy in his host's home and thus has standing to challenge a search, *see Minnesota v. Olson*, 495 U.S. 91, 98-100 (1990), but one who is merely present with the consent of the house holder may not. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). Thus, an individual who is present in another's home for a short period of time, for merely commercial purposes (such as for packaging illegal drugs), and without a previous connection to the household, may not claim Fourth Amendment protections. *See Carter*, 525 U.S. at 90-91.

Here, Fugate submitted an affidavit indicating that it was his habit to occasionally stay overnight at 619 Northumberland Avenue. (Dkt. No. 28) Moreover, Fugate stayed overnight at the residence the day before the search, with permission of the property owner, and was present when the warrant was executed. (*Id.*) In addition, Fugate kept clothing and other personal items at the residence and stored them in the master bedroom dresser as well as in a bag on the floor next to the bed. (*Id.*) The Court finds these averments by defendant sufficient to establish proper standing as an overnight guest to challenge the search. *See United States v. Bowman*, 1:18-CR-120, 2020 U.S. Dist. LEXIS 111683 (W.D.N.Y. May 26, 2020) (court assumed standing to challenge search were defendant identified himself as overnight guest and stated that he "arrived the day before [the search] to stay with a friend."); *United States v. Fields*, 113 F.3d 313, 320 (2d Cir.

4

1997) ("society recognizes as legitimate the expectation of privacy possessed by an overnight guest—even though he has at best a fleeting connection to his host's home"); *United States v. Brooks*, 15-CR-6157, 2016 U.S. Dist. LEXIS 58866 (W.D.N.Y. May 2, 2016) (allegations adequate to establish reasonable expectation of privacy where each defendant affirmed, *inter alia*, that he received permission from the individual who rented the premises to stay overnight there and was an overnight guest the night before the warrant was executed).

### There was probable cause to issue the search warrant.

Upon a challenge to a probable cause finding made in a search warrant, a reviewing court must give deference to the issuing judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1969). The court is not to conduct a *de novo* review nor is it to "interpret[] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id*. Instead, the role of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238 (internal citations omitted). To that end, warrant affidavits are entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Where, as here, the Court is reviewing the probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). Doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *See United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

Here, the search warrant application consisted of an affidavit by Captain Aaron Brennan of the City of Lackawanna Police Department as well as *in camera* testimony by

Captain Brennan and a confidential source. The Court has conducted an *in camera, ex parte* review of Captain Brennan's affidavit and has listened to a recording of the *in camera* testimony presented to Judge Szyszkowski by Brennan and the confidential source in support of the warrant application. Based on this review, the Court finds that Judge Szyszkowski had a substantial basis to conclude that evidence of criminality, specifically the unlawful possession of methamphetamine or other evidence of narcotics trafficking, would be found at 619 Northumberland Avenue. Thus, there was probable cause to issue a search warrant for the residence.

### *The search warrant did not lack particularity.*

Fugate next contends that the search warrant for 619 Northumberland Avenue was not sufficiently particularized because it essentially permitted a "general exploratory search" of the residence at the discretion of officers. To prevent a "wide-ranging exploratory search," *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), the warrant must enable the executing officer to ascertain and identify with certainty those items that the magistrate has authorized him to seize. *United States v. Vargas*, 621 F.2d 54, 56 (2d Cir. 1980). To that end, the particularity requirement of the Fourth Amendment requires that a warrant: (1) identify the specific offense or offenses for which law enforcement officers have established probable cause; (2) describe the place to be searched; and (3) specify the items to be seized by their relation to the designated crimes. *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017). The search warrant at issue here complies with these requirements.

First, the warrant specified that the specific offense for which Judge Szyszkowski found probable cause to search was the unlawful possession of methamphetamine, "a

controlled substance under Schedule I, Article 33 of the New York Public Health Law." (Dkt. No. 31, Exh. A) The warrant then expressly described the places to be searched: (1) "the premises located at: 619 Northumberland in the City of Buffalo, State of New York"; (2) "vehicle: bearing New York registration KLG 3524 being a black in color four door Cadillac sedan registered to Anthony Fugate"; and (3) the person of William Fugate. (*Id.*) Finally, the warrant permitted officers to look for and seize:

> [M]ethamphetamine, in violation of Article 220 of the New York State Penal Law, drug paraphernalia, proceeds from illicit drug trafficking, illegal firearms, and for any personal papers or documents, cellular phones-photos and data therein, or house keys which tend to identify the owner, lessee or whomever has custody or control over the premises, or items seized, and records or evidence that tend to demonstrate that an offense or crime was committed or that a particular person participated in the commission of an offense or crime.

(*Id.*) Reviewing courts have recognized that "[t]he particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011).

Fugate objects to the language in the warrant permitting officers to search for and seize "any personal papers or documents" as well as "cellular phones-photos and data therein." However, the warrant's identification of these items is qualified by the following phrase: "*which tend to identify the owner, lessee or whomever has custody or control over the premises, or items seized.*" (Dkt. No. 31, Exh. A) (emphasis added). This language, considered in totality, did not permit a general, exploratory search. Instead, it allowed officers to search specifically for papers, documents, or phones which could identify individuals who owned, resided in, or had control over 619 Northumberland Avenue, where there was probable cause to believe illegal drugs were kept. This portion of the warrant also allowed officers to search for and seize papers, documents or phones which

7

could identify individuals who possessed any of the illegal drugs, drug paraphernalia, drug proceeds, or illegal firearms potentially discovered at the residence. Indeed, "warrants in narcotics cases have generally been subjected to less exacting standards", *United States v. Sanders*, 19-CR-125, 2021 U.S. Dist. LEXIS 127697 (W.D.N.Y. July 8, 2021), and the seizure of phones, personal papers, and documents in these types of cases is generally permitted. *See, e.g., United States v. Riley*, 906 F.2d 841, 843-46 (2d Cir. 1990) (finding categories of records "and other items that constitute evidence of" drug crimes sufficiently particular and noting that "allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records'"); *United States v. Young*, 745 F.2d 733, 758 (2d Cir. 1984) (warrant for narcotics and "notes, documents and papers and other evidence of" narcotics conspiracy not overbroad or lacking in particularity). Because the documents, papers, and phones were adequately described here in terms of their connection to the crime at issue, namely the possession and potential distribution of illegal drugs, these portions of the warrant do not violate the Fourth Amendment.

Fugate also objects to the language in the warrant permitting a search for "records or evidence that tend to demonstrate that an offense or crime was committed or that a particular person participated in the commission of an offense or crime." However, Fugate "improperly focuses on this portion of the warrant to the exclusion of the entire warrant [and] this rather broad provision must be construed in light of the preceding list of seizeable items." *United States v. Jackson*, 90 Cr. 109, 1990 U.S. Dist. LEXIS 13148 (S.D.N.Y. Oct. 5, 1990). Immediately prior to the statement highlighted by defendant is a specific, illustrative list of evidence to be searched for and seized, including

methamphetamine, drug paraphernalia, proceeds from illicit drug trafficking, and illegal firearms. Thus, the warrant's list of seizeable items serves to limit the broader language cited by Fugate. *See Young*, 745 F.2d at 733 ("[T]he boilerplate language challenged by [defendant] followed a list of more specific items to be seized, and could be construed only in conjunction with that list."); *Riley,* 906 F.2d at 844 (finding that warrant containing list of illustrative items to seize was sufficiently particular notwithstanding provision allowing seizure of "other items that constitute evidence of the offenses"); *Andresen v. Maryland*, 427 U.S. 463 (1976) (concluding that the presence of a detailed list saved the more expansive sections of the search warrant from invalidity, since it was clear from the context that the term "crime" in the warrant referred only to the crime of false pretenses).

Moreover, the warrant states clearly on its face that the probable cause finding relates to the offenses of unlawful possession of drugs, specifically methamphetamine. Thus, when the paragraph delineating items to be searched for is read as a whole and in the context of the entire document, the language permitting a search for "other evidence or records that a crime was committed" is most logically understood to be a reference to evidence or records of illegal drug possession. *United States v. Cooper*, 90 Cr. 514, 1991 U.S. Dist. LEXIS 4551 (S.D.N.Y. April 9, 1991) (upholding search warrant directing police to look for "evidence of the possession of narcotics and the means of committing a crime" and noting that "[l]anguage such as this has been found to be sufficiently particular in search warrants issued to search for narcotics."); *United States v. Alston*, 15 Cr. 435, 2016 U.S. Dist. LEXIS 63776 (S.D.N.Y. April 29, 2016) ("Courts have frequently rejected particularity arguments where context makes clear that a specific phrase or paragraph, although insufficiently precise when read in isolation, is nevertheless appropriately

limited."); *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2011) ("A warrant need not necessarily survive a hyper-technical sentence diagramming and comply with the best practices of *Strunk & White* to satisfy its particularity requirement.").

The Court finds both the warrant and the warrant application here to be very thorough. The search warrant itself, read in totality, makes clear that Judge Szyszkowski found probable cause to believe that evidence of possession of methamphetamine would be found at 619 Northumberland Avenue and that officers were authorized to search for evidence of this crime, including evidence that would show who possessed the drugs or had control over the residence. "Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best they could reasonably be expected to do under the circumstances, have acquired all descriptive fact which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *Young*, 745 F.2d at 759.

For these reasons, the Court finds that the search warrant for 619 Northumberland Avenue does not fail for lack of particularity.[3]

---

[3] Even if the language of the search warrant was found to be insufficiently particular, the Court still would not recommend suppression of the evidence. "Evidence seized pursuant to a warrant for which actual probable cause does not exist or which is technically deficient is admissible if the executing officers relied on the warrant in 'objective good faith.'" *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995); *quoting United States v. Leon*, 468 U.S. 897, 923 (1984). There are four circumstances in which the good faith exception does not apply: (1) where the issuing judge has been knowingly misled; (2) where the issuing judge wholly abandoned his or her judicial role; (3) where the application is so lacking in indica of probable cause as to render reliance on it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). None of these circumstances apply here. Even if the instant warrant could have been written more precisely in terms of the items to be seized, none of the alleged technical deficiencies made the warrant so facially deficient as to render officers' reliance on it unreasonable or in bad faith. As the Supreme Court and the Second Circuit have held, an officer is not "required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he requested." *United States v. Buck*, 813 F.2d 588, 591 (2d Cir. 1987); *quoting Massachusetts v. Sheppard*, 468 U.S. 981-90 (1984).

*Officers were permitted to open and search the safe.*

Defendant further argues that the search is invalid because the warrant did not refer to drugs locked in a master bedroom safe, nor did the warrant specifically authorize officers to search a locked safe found inside the residence. However, the scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search, and by the places in which officers have probable cause to believe those objects may be found. *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Stated another way, a search warrant authorizing a search of a residence "generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Fable*, 3:18-CR-3, 2018 U.S. Dist. LEXIS 129527 (Dist. Conn. July 24, 2018); *accord United States v. Ross*, 456 U.S. 798, 820-21 (1982). "Thus, a warrant that authorizes an officer to search a home for [an] illegal [item] also provides authority to open closets, chests, drawers, and containers in which the [item] might be found." *Ross*, 456 U.S. at 820-21. Moreover, officers may force open a locked door on the premises if they believe the objects sought are behind it. *United States v. Kyles*, 40 F.3d 519, (2d Cir. 1994) (where officers had warrant to search entire apartment, they were permitted to break a lock and search a locked bedroom).

Here, the warrant authorized offices "to make an immediate search of the premises located at: 619 Northumberland in the City of Buffalo, State of New York" for, *inter alia*, methamphetamine, drug paraphernalia, proceeds from illegal drug trafficking, and illegal firearms. (Dkt. No. 31, Exh. A) The safe was found during the search of a master bedroom closet within the residence of 619 Northumberland. Moreover, the safe was a location or

object wherein drugs, drug paraphernalia, proceeds of drug trafficking, illegal firearms, or other evidence of drug trafficking could be secreted. Because the search undertaken here was authorized by the warrant, officers did not need separate permission to unlock the safe and search is contents. *See United States v. Abrahams*, 493 F. Supp. 310, 312-13 (S.D.N.Y. 1980) ("The locked containers were on the premises that the officers were authorized to search, and it was reasonable for them to search the safe and filing cabinet for the documents listed on the warrant."); *Fable*, 2018 U.S. Dist. LEXIS 129527, *36 ("[T]he search warrant authorized the police to open the safes because they could have contained the evidence that was the subject of the search warrant, including firearms, ammunition, bullet casings and fragments, clothing, or electronic devices. The fact that the safes were locked does not prevent the police from having the authority to open[] them to execute the warrant."); *United States v. Sensi*, 542 Fed. Appx. 8, 10 (2d Cir. 2013) ("[T]he search warrant plainly authorized the officers to search the [locked] black duffle bag in [defendant's] closet, as it was a container in [defendant's] home that was capable of holding the items for which the search warrant authorized them to look.").

For all these reasons, it is recommended that Fugate's motion to suppress evidence discovered during the execution of the search warrant at 619 Northumberland Avenue on May 6, 2021 be denied.

## Omnibus Discovery Demands

### *Discovery and Inspection*

Defendant moves for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16. (Dkt. No. 27, pgs. 8-9) Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant. While Rule 16

was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded, or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Fed. R. Evid. 702, 703 and 705. *See* Fed R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Defendant's Rule 16 requests include, *inter alia*, chain of custody and "current disposition" of evidence; communications between state and federal law enforcement agencies; copies of any items seized on the day of defendant's arrest; any pertinent audio and/or video recordings; all photographs related to defendant's arrest; all cell phone extraction reports[4]; and any search warrants and/or search warrant applications not already disclosed. (Dkt. No. 27, pgs. 8-9) Defendant also requests the names, identities, and qualifications of any expert witnesses the Government intends to call at trial, as well as any reports, results of tests, experiments, or examinations which the Government intends to offer as trial. (*Id.*)

---

[4] Defendant submits that, upon information and belief, two cell phones were seized during the search warrant execution from either the premises or from Fugate's person. (Dkt. No. 27, pg. 9) Defendant has not moved to suppress any cell phone evidence nor has he filed an affidavit of standing with respect to any cell phone found during the search.

The Government responds that it has provided all voluntary discovery required under Rule 16 or has made such discovery available for inspection by defense counsel. (Dkt. No. 27, pgs. 8-12) The Government has provided defendant with copies of documents and recordings, which the Government may introduce at trial. (*Id.*) Specifically, the Government has provided defendant with a copy of his criminal history; police reports from the execution of the search warrant at 619 Northumberland; a recording of defendant's video interview; a recording of an interview of an eyewitness to the warrant; Fugate's *Miranda* card; forensic laboratory analysis of the seized narcotics; copies of all search warrants executed in the investigation; photographs taken during the execution of the search warrants; and an inventory of the items seized. (*Id.*) The Government states that it intends to use all items of evidence that defendant has been provided with or made aware of in accordance with Federal Rule of Criminal Procedure 12(b)(4)(A). (*Id.* at 2-3, 11-12)

Based upon the representations made by the Government, defendant's request for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that its disclosure obligations pursuant to Rule 16 and its notice obligations pursuant to Rule 12 continue up through and during trial. *See* Fed. R. Crim. P. 16(c) and 12(b)(4)(A). Finally, the Government is expected to comply with all requirements in Rule 16, Federal Rules of Evidence 702, 703, and 704, and Judge Vilardo's pretrial order as they apply to expert testimony.

*Disclosure of Rule 404(b) and Impeachment Evidence*

Defendant moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

(Dkt. No. 27, pgs. 10-11) Defendant also moves for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (*Id.*)

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Here, the Government is instructed to disclose Rule 404(b) evidence and impeachment evidence in advance of trial, when required to do so by the District Court. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of Judge Vilardo at the time of trial.

### *Brady/Giglio Material*

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny. (Dkt. No. 27, pgs. 11-14) The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a

defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

Here, the Government states that it is fully aware of its obligations and responsibilities under *Brady* and acknowledges its continuing duty under *Brady* to provide such material, if and when it becomes aware of it. (Dkt. No. 31, pgs. 12-13) Further, the Government agrees to provide *Giglio* material prior to trial, in accordance with the District Court's scheduling order, and no later than when the Government produces and delivers the *Jencks* Act material in this case. (*Id.* at 13-14) Given the Government's representations and for the reasons just stated, defendant's motion to compel the production of *Brady/Giglio* material is denied as moot. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendant. See *United States v. Padovani*, 14-CR-00224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

*Disclosure of Jencks Material*

Defendant requests disclosure of witness statements prior to trial. (Dkt. No. 27, pgs. 14-16)

The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("*Jencks* material"). See also *Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for

producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

Here, the Government indicates that it will produce *Jencks* material two weeks before the commencement of trial. (Dkt. No. 10, pg. 15) In light of these representations, defendant's request for disclosure of witness statements is denied as moot.

<u>Preservation of Rough Notes</u>

Defendant moves for the preservation of all rough notes taken by any federal, state, or local agents or officers who participated in the investigation of defendant, whether or not incorporated into official records. (Dkt. No. 37, pgs. 16-17) Defendant also requests that the Government be directed to preserve any notes by government witnesses. (*Id.*) The Government indicates that has no objection to the request that government agents retain notes taken during the investigation of the case. (Dkt. No. 31, pgs. 10-11) The Court grants defendant's motion and directs the Government to continue to arrange for the preservation of all rough notes.

<u>Leave to File Additional Motions</u>

Defendant moves to reserve the right to make further motions as necessary. (Dkt. No. 27, pg. 17) To the extent defendant intends to bring motions based upon new information or evidence that has not yet been disclosed, his request for leave to file additional motions is granted. To the extent defendant intends to bring motions

17

concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

*Government's Motion for Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of defendant and which defendant intends to introduce as evidence at trial; the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case; and advance disclosure of any statements defendant proposes to introduce pursuant to Federal Rule of Evidence 807. (Dkt. No. 31, pgs. 15-16) The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant William Fugate's motion to suppress evidence be denied. (Dkt. No. 27) It is ordered that defendant William Fugate's omnibus discovery demands are decided in the manner detailed above (Dkt. No. 27) and that the Government's request for reciprocal discovery is granted (Dkt. No. 31).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED**.

Dated: July 13, 2022
       Buffalo, New York

                                             */s/ Michael J. Roemer*
                                           MICHAEL J. ROEMER
                                           United States Magistrate Judge